Our next cases are 22-3056 and 22-3057. VI Derivatives v. Director of Internal Revenue and VI FX v. Director of VI Internal Revenue. Good morning. I'm Joseph M. Irwin, counsel for VI FX LLC and VI Derivatives LLC. May it please the court. In 2008, we had a hearing in district court about whether the United States should be let in as a party to these consolidated cases. And I told the judge then, if you do, it will just muddy the waters. And here we are, 15 years later, still trying to sort it out. Well, there's some muddy waters here. There's no doubt about that. But as I understand it, we're not... We're here to discuss the VI's claims, not the U.S. government's claims. Is that correct? That's right. The U.S. government claims are done. They're put to bed. That's right, but they're here. They're here again, but they're put to bed, right? So we're going to talk about the VI's claims. Yes, Your Honor. And their claims are laid by any standard, laches, revos, rule 60. Well, let me just take that a bit back. With laches, you have to show prejudice. And I'm not sure whether in this court, I think you determined that any delay, or most of the delay, was not the fault of the government, but the fault of the partnerships and the partnership entities. But even beside that, how do you show prejudice of anything, the delay isn't due to the benefit of the, I don't want to say the taxpayers, to distribute the money. Your Honor, I beg to differ. The delay, it depends on where you start from. The tax year is involved here in 2001. The notices of deficiency, or FFAS here for partnerships, were issued in 2005. The cases were filed in 2006. The residency trial was in 2010. The decision was an issue, after some post-trial motions, in 2011. In 2011, the United States filed its motion for summary judgment. The Virgin Islands didn't file their motion for summary judgment in 2021. You cannot blame the 10-year gap on the petitioners, the appellants. Counsel, could we put aside for a moment the various dates and the passage of time, which certainly are critical to the application of laches? But I'd like to first determine whether laches is even appropriately raised here. My, any of my experiences with laches over the years have led me to conclude that it's essentially an equitable defense, and that it's a defense to a plaintiff's claim, that it wouldn't be a defense or wouldn't be a reason to suggest that a motion was untimely. Can you point me to any case, to any authority, in which a plaintiff has asserted laches in defense to a dispositive motion? Because I'm not aware of any. Your question is the reason we included in our brief the explanation of how tax cases proceed. Although not only the protagonist, the person, the party that has to prosecute the case is the taxpayer. If they don't, they automatically lose. Well, but that sounds to me like a policy argument, Counsel. I mean, I'm asking you about a legal proposition. We decide cases based upon the application of facts to rules. Now, you've given us various dates, and they're the facts, but I'm grasping to try to find a rule that would suggest that laches is applicable here. Well, Your Honor, you'll see all the laches cases, most of the laches cases, actually including the one or two that the Virgin Islands cited is actually a land claims case. It's not a civil procedure case. It's a land claims case for someone waiting too long. You still haven't answered my question because you're the party raising it. So what's your authority for raising it in a context like this, about the lateness of a dispositive motion? Your Honor, I go back to the tax procedure. All right. The process works. That's the only explanation because the laches isn't our only remedy here. I understand. That's why I'm actually trying to set it aside if there is no support for it or hear it if there is support for it, but I haven't heard anything, and I'll let the matter drop. Let me pick up on that in terms of the public right. There's an argument here and I think it's in denial that the government is advocating for the public right and therefore the doctrine of laches does not apply. That seems like a pretty clear proposition and a correct proposition. What's wrong with that? Well, if the Attorney General's Office of the Virgin Islands can bring up a motion any time it wants, then it's controlling the district court's doctrine and not the court. I mean, 10 years? I just can't imagine a court. Well, that doesn't answer the question about what's wrong with the argument that whether the public right or public interest is distributed. Well, it's not infinite, Your Honor. You're saying that that concept is not a good concept, not a good doctrine, but I don't think it's a doctrine in terms of the law. Of course it's a valid doctrine, Your Honor, but it's not infinite. At some point, things got to end. I mean, that's where the doctrine of repose comes in. Rule 60B contemplates motions within a month and then within a year of final judgment. Laches might be considered a little more on that continuum, but finally, after 10 years, repose has to kick in. People have moved on. The parties, the principals have moved off the island. They sold the house. At some point, you just can't give the government an infinite amount of time to raise an issue. Let me sort of go back to something Judge McKee asked earlier, and that's prejudice. What's the prejudice to your clients here? For one, it's just simply time. Well, that's a non-sequitur. You're saying if time is a prejudice, then you eliminate the finding of prejudice because time has got to pass in order for the question to be raised. So you're saying the very fact that the question was raised gives you prejudice. That can't possibly be. Well, Your Honor, there's cases, and they're cited in the brief, that passage of time, if there's enough of it, can be prejudice. Well, quantify it. There's usually something else. Can you quantify the prejudice here other than just the passage of time? Lots of witnesses, lots of documents. Yeah, I mean, you know, the obvious things of, you know, witnesses are gone. People have died. None of the principals have. We've got the residency determination. Well, we have the residency determination. It's fine with us, the federal government. So what people are you talking about? It seems to me it's a classic paper documents case. On the tax shelter issue, yes, Your Honor. There's no doubt that it's just a tax issue case on paper. That's what we're here about, right? No, Your Honor, we're here about the law of the case where the court's going to uphold its prior decision and the district court's decision in 2013. What I meant by that is the only thing, the residency issues are over, right? So it's just a matter of what, if anything, your client's of, correct? Isn't that what this is all about? Eventually, yes, Your Honor. So isn't that a paper case? That's a paper case. But it's a 10-year-old paper case. It's too old. And generally, back to the beginning, the first thing the court has to look at is the law of the case. And the 2015 memo by the district court is the law of the case, which said cases were final in 2013, all the consolidated cases, even these two. And that was affirmed by this court in 2016. And for the court now, 10 years later, to say, no, we really didn't mean that. It's not final. And they get to do a substantive motion now after the district court said we can't raise jurisdiction, which generally, you can raise jurisdiction until the case is closed, and in some rare cases, even afterwards. Subject matter jurisdiction. Subject matter jurisdiction. Subject matter jurisdiction. Yes, Your Honor. Thank you, court. Good morning, Your Honor. Dennis Croson for the Virgin Islands Bureau of Internal Revenue Police Court. Good morning. Good morning. Let me start with the obvious. Sure. Why did the Virgin Islands wait 10 years with other papers? Your Honor, there's a procedural step that needs to take place in the TEFRA proceeding. I'm sorry. I didn't hear what you said. You wish to talk to me? Oh, I'm sorry. Say it again. Sure. There's a procedural requirement in TEFRA that the FPA needs to come to judgment in order for the government to be able to collect the tax, or at least do the computational justice tax. That piece had not, we didn't have a judgment. What we had was a determination that subject matter jurisdiction, there was no viable claim to subject matter jurisdiction deficits. In 2014, the district court asked all the parties to identify anything that remained in the case. We argued, or set forth with the court, that there were penalties associated with the FPA that had yet to be determined and collection of the tax. The partnerships argued that they continued to want to argue the narrow case on a loss transaction and the penalties. So the district court was fully aware that additional proceedings needed to take place. Does that give you at one point, maybe in 2015, agreeing that additional proceedings had to take place? That wasn't really the case, was it? Correct. And so the plaintiff is the moving party. They would presume that they were going to continue with their case. They would continue with their discovery and continue to make their arguments with respect to the bona fides or not of the son of boss transaction. But then they conceded the son of boss transaction as being a tax shelter that shouldn't be followed, which left the penalties. But that was in the case dealing with the United States, right? When I say the United States, the IRS. That's when they made those concessions. That's correct. And there's so many judgment papers there, right? That's correct. And there had not been a determination. Under TEFRA, in order for us to collect the tax, we need a judgment. Us being the government of the Virgin Islands. The Virgin Islands needs a judgment. On the, on the. In order to move forward because. Counsel. Counsel, let me just ask if you agree with this. My law clerk who worked on this case. Check the docket and she was not. Able to find anywhere. That a final judgment had been reached in this case. Prior, of course, to the. The, the, the, the. The dispositive. Motion and ruling on it that we've referred to. Would you agree with that? Yes. So. As a practical matter, then if we assume. That the LLCs are correct. That there, that there was a final judgment. Okay. So. Putting aside the. What the docket and what your other arguments suggest. What does that mean? Again, practically speaking here. What's what's the implication of all of that. Wouldn't that mean that. That. The VI Bureau is, is entitled still to deficient. To the deficiency here to the taxes that are owed. No. Your honor. That would not be correct because there needs to be a judgment on the merits of the. The merits of the. For the Virgin Island cases was whether or not some of us transaction. Was legitimate or not. And whether a provisional penalty. I I'm sorry. I misspoke. And I, I, I meant to say, if we assume that the LLCs. That there, that there was a final judgment here. I think I misspoke. If, if that is the case, isn't the next step. To make a determination as to how much is. Once there has been a final judgment. If we were to read what final judgment meant. That meant that there. The next step would be computational investments. And I believe that the 2016 decision of this court suggested as much that it. See if it's the next step, the final step, the only thing left really to do was computational. That. Your honor, that was the U.S. case. We were not a party to that. I'm sorry. Correct. But that, that statement wasn't made in that case. With respect to the U.S. case. The district court did cite it in our case that, that, that there was nothing left to do. But procedurally, we need a judgment in order to move forward and to do the computations and collect the tax. So we could have styled it. It was styled as a motion for summary judgment. Supposedly it could be styled as a motion for final judgment. But we needed that final judgment and determination of whether or not the empire was valid. Two issues, some boss and penalties, and that had yet to be determined by any court yet. And so we were simply following the next process, the next procedure, which is to obtain a final judgment and then proceed with the computational adjustments and the collection of tax. So you have the summary judgment in that, right? That should be from the district court. Yes, we do. So the next step from your perspective is just calculating the penalty. It is. They didn't challenge us. They didn't, they did not raise any defenses to the penalties. So as we see it, we will run computational, those computational adjustments will be down to the LLCs, which then will flow through to the individuals and proceed. I have nothing for this. Thank you. Morning. Good morning, Your Honor. I represent the United States in this case. And we are here today, especially asking for this court to give effect to the bento one decisions and its holdings that the BIDR may try to assess and collect taxes regarding Richard and Lana, which requires a final judgment in LLC cases in the Virgin Islands. And they failed. I'm confused now as to why you're here. We have the final judgment as to the federal taxes. Yes. So say again what you just said, because your case really is over, isn't it? Well, not precisely. There is still tax court cases where we are sort of in stasis waiting to see if the Virgin Islands is able to collect from Richard and Lana bento. And if they do not, there is what the second circuit termed as residual liability in the Mollison case, which was also a bento case. And in that basically the bentos are taking advantage of the United States tax exclusion under 932C4, but they're not eligible for it unless they satisfy all the requirements of 932C4, being a bona fide resident, fully reporting their income to the BIDR. The residency is not determined. That's right. Reporting their income to the BIDR and fully paying their tax liability to the BIDR. The interest of the United States hasn't been perfected yet, right? I mean, you're kind of in a prophylactic posture saying that if, yes, I don't know. I'm not pushing for the interest of the United States at the moment, right now. Okay. I have 54 reasons why I'm here. The first is just to ensure that whatever the result of this opinion does not do anything to impair the United States' right to residual liability if the bentos do not pay the BIDR. You're saying that there could be federal liability as a result of not paying the BIDR liability. That's right. Underpayment? Is that what you're saying? That's right. So if they underpay their taxes to the BIDR. And that's what the tax is. Is that because of the credit they get against the federal? It's not really credits. It's federal tax exclusions, and they're only eligible if they full pay the BIDR. So that goes back and resurrects a federal liability if they didn't. Okay. That's exactly right. Second, we want to ensure that the court was aware of the tax court proceedings, which are publicly available information. They are out there on the congressional consensus. We want it to be available to defend treasury regulations that were an issue in the motion to dismiss. If this court decided they wanted to discuss them. And then the fourth reason was just to try to be a useful resource to the court just because the United States has been involved in all of the legislative appeals. And if there's any questions that the court has about the procedural history or anything like that, we just want it to be available. Judge Smith? No, thank you. No, actually. I'm just wondering, which is weird. The liability of the BIA, the liability of the council. One doesn't cancel out the other. That's just my own reasoning right now. Thanks for being here. We understand why you're here. It's helpful. Okay. Thank you. As I said in our reply brief, the only reason the United States is here is to obtain the panel to show the principles of these LLCs are legal tax abusers. And they do that every chance they get. And they continue to do that. You're saying that the federal government is here basically to create favor with us against your plan? Well, I think so. What does tax the panel do? To give you the impression that they're equal tax payers. But their character is not. They're not tax payers. They're not tax payers. But the residual liability theory that the United States has espoused exists is only a theory. It's an interpretation of the statute. It's not been ruled on in any court. That's really not the court right now. Exactly. It shouldn't be your argument. But back to some of the comments in the first thing, when Judge Smith said his clerk did not find where the final judgment was entered. True, the docket does not list anything as a final judgment. But the district court's order in 2015 said, quote, there can be no doubt that the Third Circuit's precedential decision constituted a final judgment on the merits for these consolidated cases. And then this court, in the appeal of that decision, said accordingly, as the district court's order explained, the final judgments on the merits to which res judicata defense could attach existed in the federal proceedings once the time to appeal the vento residency decision expired at the very latest. But the merits in those cases were the residency issue, right? As to the federal ones. Your Honor, that goes to the Virgin Islands argument that it can't be a final judgment unless you address all the issues. That's not the law. I mean, cases are decided all the time when there are issues not decided. And sometimes big issues, sometimes just inconsequential ones. But every issue pled in a pleading does not have to be resolved in final judgment. That's not the law. The court just has to say, this is a final decision. And that's what this court did, said. And that's what the district court said. I do that based on what's before the court, right? It's a final decision. Who are we before the court? Well, Your Honor, we appealed the district court decision. And this court said we were wrong. So because then we were arguing it wasn't final. The district court said, yeah, it was final. This court said it was final. And now the government of the Virgin Islands is changing their stories. Seriously. Because then they appeared in the 2016 appeal, even though their cases weren't a party, and argued that the cases were final then. Now they've changed their tune. This is where we bring up the doctrine of judicial estoppel of the court. So it doesn't get embarrassed. It needs to be consistent. If you affirm the district court, you're obviously being inconsistent. And that's just reprehensible to the rule of law. That's it. Nothing further. Thank you. Thank you. All right. Thank you, counsel. Thanks for your briefing.  May it please the court.